**Edwin Wayne JOBE, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C4–99–1858.

Court of Appeals of Minnesota.

May 9, 2000.

Samuel A. McCloud, Carson J. Heefner, McCloud & Boedigheimer, P.A., Shakopee, for appellant.

Mike Hatch, Attorney General, Max Keller, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by HARTEN, Presiding Judge, DAVIES, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY,* Judge

Edwin Jobe appeals from his driver's license revocation, arguing that the stop underlying his DWI arrest was precipitated by an informant tip that was not sufficiently reliable to justify the stop. Because we find that under the totality of the circumstances the tip was sufficiently reliable to give the officer a reasonable suspicion of criminal activity, we affirm.

## FACTS

On the evening Jobe was arrested, a man called 911 and reported that there was a "drunk" in front of him who was "swerving around on the road." The man described the vehicle as a two-tone tan and

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn.Const. art. VI, § 10.

brown Ford pickup truck with a topper, license plate number CJZ–334, and told a dispatcher that the vehicle was heading northbound on LorRay Drive. At the dispatcher's request, the man identified himself as David Hanson. The dispatcher did not ask for Hanson's address or telephone number. When the dispatcher asked for a cross-street near the drivers, Hanson said that he had seen a patrol headed the opposite direction on LorRay Drive. Hanson then told the dispatcher that he had arrived home, but he had seen the patrol car make a U-turn to follow the Ford pickup.

Officer Ronald Leiferman was patrolling on LorRay Drive when Hanson's call came in. Leiferman had been heading southbound on LorRay Drive. He turned west on Howard Drive, but made a U-turn when dispatch told him that the suspect driver was headed in the opposite direction. Leiferman turned left on Haughton and spotted two vehicles. He stopped the lead car, a pickup truck matching Hanson's description, and saw the other car turn off Haughton. After conducting several sobriety tests, Leiferman arrested Jobe for driving under the influence.

Leiferman testified that he saw only two vehicles in the area and assumed that the second car was driven by David Hanson. He testified that he did not take down the second car's license plate and that he later looked in the phone book but was unable to locate a listing for a David Hanson who resided near the area where the second car turned off Haughton.

## ISSUE

Was the informant's tip sufficiently reliable to justify a traffic stop?

## ANALYSIS

■ Under the Fourth Amendment, a police officer must have a specific and articulable suspicion of a traffic violation to justify stopping a vehicle. *Marben v. State, Dep't of Pub. Safety,* 294 N.W.2d 697, 699 (Minn.1980). The factual basis required to support a "routine traffic check" is minimal, however, and that factual basis may be supplied by information that the officer acquires from another person, including an informant. *Id.; see also Olson v. Commissioner of Pub. Safety,* 371 N.W.2d 552, 554 (Minn.1985) (rejecting argument that reasonable suspicion may be based only on officer's personal observation). The validity of a stop on given facts is purely a legal determination for this court. *Berge v. Commissioner of Pub. Safety,* 374 N.W.2d 730, 732 (Minn.1985).

■ In order to justify a traffic stop, an informant's tip must possess sufficient "indicia of reliability." *Olson,* 371 N.W.2d at 556. The Minnesota cases dealing with traffic stops based on informant tips have focused mainly on two factors: (1) identifying information given by the informant, and (2) the facts that support the informant's assertion that a driver is under the influence. *See City of Minnetonka v. Shepherd,* 420 N.W.2d 887, 890–91 (Minn. 1988) (examining both factors). Neither of these factors is determinative, however; we evaluate the basis for a stop in light of the totality of the circumstances. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990); *State v. Lipinski,* 419 N.W.2d 651, 653 (Minn. App.1988). We begin with the presumption that citizen informants are reliable. *Marben,* 294 N.W.2d at 699.

■ Considering the totality of the circumstances, Leiferman had a reasonable basis for stopping Jobe's vehicle. Hanson identified himself by name and told the dispatcher location and direction of travel. *See Shepherd,* 420 N.W.2d at 890 (tip reliable when informant identified himself as station attendant at particular gas station); *Playle v. Commissioner of Pub. Safety,* 439 N.W.2d 747, 748 (Minn.App.1989) (tip

reliable when informant identified as employee of particular Burger King). The information Hanson offered about Jobe's vehicle and driving conduct reinforced the reliability of the tip. He also told the dispatcher when he saw the patrol car in the area and when the patrol was positioned behind Jobe's vehicle. This information demonstrated that Hanson's tip was based on personal observation and offered an example of driving conduct to support his assertion that Jobe was driving under the influence. *See Shepherd,* 420 N.W.2d at 891 (tip reliable when circumstances allowed inference that informant had personally observed driver); *Marben,* 294 N.W.2d at 699 (tip reliable when truck driver gave his location in relation to patrol car and suspect vehicle so that trooper could verify that truck driver was personally observing driver); *State v. Newgard,* 392 N.W.2d 27, 29–30 (Minn.App.1986) (tip reliable when caller described drunken conduct). When Leiferman arrived in the area, he found the vehicle described by Hanson ahead of a second vehicle, which he reasonably inferred was Hanson's vehicle. Based on the above information, Leiferman properly concluded that Hanson's tip was reliable.[1]

■ Jobe argues that because the state did not subsequently locate Hanson,[2] his tip was not reliable. We disagree. We have recognized that

> [w]hen an informant provides sufficient information so that he may be located and held accountable for providing false information, the officer is justified in assuming the caller is being truthful in identifying himself.

*Playle,* 439 N.W.2d at 748 (citing *Shepherd,* 420 N.W.2d at 890). Hanson not

only gave his name, but also the location of his car in relation to Jobe's and Leiferman's. This information was sufficient to allow the police to further investigate the tip. For instance, Leiferman could have taken down Hanson's license plate or a description of his vehicle. That Leiferman chose not to do so does not mean he was unjustified in believing that Hanson had correctly identified himself. *See Shepherd,* 420 N.W.2d at 890 (fact that police did not verify caller's employment as station attendant did not mean officer was unjustified in believing caller was who he said he was).

■ Jobe also urges the court to adopt a rule requiring dispatchers to collect addresses and phone numbers from citizen informants. Under that rule, Jobe asserts, we could determine whether an informant tip was reliable based on whether police or counsel are subsequently able to locate the informant. While we agree that collecting addresses and phone numbers would be a good practice for dispatchers to adopt, we do not believe the Fourth Amendment requires such a rule, and we decline to adopt it.

■ The rule Jobe urges would shift the timeframe of the reasonableness determination from the time of the stop to some later point in time. The Fourth Amendment asks us to inquire whether an officer, *at the time of a stop,* under the totality of the circumstances, had a reasonable suspicion of criminal activity. *See Berge,* 374 N.W.2d at 732 (stop is lawful if officer can articulate that he had particularized and objective basis for suspecting particular person stopped of criminal activity); *cf. Andersen v. Commissioner of Pub. Safety,*

---

1. In reaching this conclusion, we have considered the United States Supreme Court's recent opinion in *Florida v. J.L.,* —— U.S. ——, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), which was handed down after oral arguments in this case. That case, however, is distinguishable on its facts and does not control the decision here.

2. The state made minimal efforts to locate Hanson following Jobe's arrest and was not required to locate Hanson. Thus, we disagree with Jobe's characterization of Hanson as unidentifiable or anonymous.

410 N.W.2d 17, 19 (Minn.App.1987) (probable cause evaluated from viewpoint of prudent officer on the scene *at the time of arrest* ) (emphasis added); Wayne R. La-Fave, *Search and Seizure,* § 3.2(d) (3d ed. 1996) ("It is axiomatic that hindsight may not be employed in determining whether a prior arrest or search was made on probable cause."). The fact that police fail to locate an informant later does not show that they were unjustified in relying on the tip at the time of the investigatory stop. *See Shepherd,* 420 N.W.2d . at 890, n. 1 (identifying information supports reliability of tip even if police do not follow up and confirm the information);[3] *State v. Davis,* 393 N.W.2d 179, 181 (Minn.1986) (face-to-face tip from unidentified motorist who continued on her way found reliable); *Marben,* 294 N.W.2d at 699 (tip from unidentified trucker found reliable).

Jobe finally asserts that a stop is not justified unless the informant observes a traffic violation and that swerving within one's own lane is not a violation. We note initially that Hanson said Jobe was "swerving around on the road," which gives no indication that the swerving was limited to Jobe's own lane. Additionally, "[a]n actual violation of the Vehicle and Traffic Law need not be detectable" to justify a stop. *Marben,* 294 N.W.2d at 699. On the facts of this case, the stop of Jobe's car was justified. *See State v. Engholm,* 290 N.W.2d 780, 782, 784 (Minn. 1980) (stop justified when car was travelling 15 to 20 miles per hour in 30 miles per hour speed zone and weaving within its own lane); *State v. Ellanson,* 293 Minn. 490, 490–91, 198 N.W.2d 136, 137 (1972) (officer had right to stop driver to investigate unusual driving after observing driver swerving within his own lane).

## DECISION

Because Hanson's tip possessed sufficient indicia of reliability to support Leif-

erman's reasonable suspicion that Jobe was driving under the influence, we affirm the district court's determination that the investigatory stop was valid and accordingly affirm revocation of Jobe's driver's license.

**Affirmed.**

---

**3.** In *Shepherd,* the court recognized that if police later locate an informant, that fact may defeat an argument that identifying information was inadequate. *Id.* at 890, n. 1. It does not follow, however, that the police's failure to locate an informant, by itself, proves that identifying information given by an informant was insufficient to support the reliability of the tip.