**STATE of Minnesota, Appellant,**

v.

**Gregg M. JOHNSON, Respondent.**

**No. C1-86-604.**

Court of Appeals of Minnesota.

Sept. 2, 1986.

Hubert H. Humphrey, III, Atty. Gen., R. Kathleen Morris, Scott Co. Atty., Susan K. McNellis, Asst. Co. Atty., Shakopee, for appellant.

Loren Gross, Minneapolis, for respondent.

Considered and decided by LANSING, P.J., and PARKER and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

This appeal is from a pretrial order suppressing evidence and dismissing a charge against respondent Gregg M. Johnson for driving while under the influence of alcohol in violation of Minn.Stat. § 169.121, subd. 1(a) (1984). The State of Minnesota contends the trial court clearly and unequivocally erred in concluding that the state trooper made an illegal stop and in suppressing all of the evidence obtained. Johnson has not filed a brief nor moved for an extension of time within which to do so, and this matter is proceeding pursuant to Minn.R.Civ.App.P. 142.03. We reverse and reinstate the charge against Johnson.

## FACTS

Johnson was arrested on March 12, 1985, at about 10:20 p.m. after being stopped by State Trooper Timothy Murphy. The trial court considered conflicting testimony elicited at a pretrial hearing. The transcript of an earlier implied consent hearing was also admitted into evidence with the consent of the parties.

Trooper Murphy testified that he was proceeding south on state highway 169 in Scott County. He was traveling in the left lane when he saw the vehicle immediately in front of him make a sudden left turn onto county road 14 without signaling or braking. As he went by the intersection, Murphy noticed the car had turned off its headlights as it was crossing the northbound lanes of T.H. 169. The car continued east on county road 14 for about 100 feet and stopped.

Murphy proceeded to the next crossover, turned around, proceeded north on highway 169, and turned right on county road 14. The car was stopped with its lights off.[1] Murphy claimed that the car was

parked in the eastbound lane of county road 14 because the shoulders had not been completely plowed of snow. As Murphy pulled up behind the car, its headlights came on and it started to pull away. At that point, Murphy activated his lights and pulled the vehicle over.

Murphy testified at the pretrial hearing as to why he stopped the vehicle:

Well, specifically due to the driving conduct that I had observed prior to turning around. The fact that he had made the sudden left turn and had extinguished his headlights and stopped in a traffic lane.

Murphy was also "concerned about * * * if there was a problem with the driver" or about possible criminal activity because "there was a nursery right there * * *. They don't have any fences around their facilities down there."

Murphy walked up to the driver's side and identified Johnson from his driver's license. Murphy testified that he smelled alcohol when Johnson rolled down the window and that Johnson's eyes appeared bloodshot when he shined his flashlight in the window. Murphy asked Johnson to step outside the vehicle. Johnson had to pull himself out by holding onto the door. At that point or soon thereafter, Murphy asked Johnson if he had been drinking; Johnson admitted that he had been.

Contrary to Murphy's testimony, Johnson claimed he was proceeding *north* on T.H. 169 after having left a friend's house. At the implied consent hearing Johnson's friend verified that Johnson had left his house about 9:40 or 9:45 p.m. Johnson testified that he turned right on county road 14, proceeded east for about one-half mile, and stopped. Johnson testified that the shoulders were narrow but plowed, so that he had to park only partially on the road. He turned off his headlights, left his parking lights on, and got out of his car to urinate. He testified that before he got back into his car, a marked squad car

1. At the implied consent hearing Murphy testified that he was positive the stopped car was the same one he had been following on T.H. 169 and identified it as a red Camaro.

pulled up behind him. At the implied consent hearing Johnson admitted that when Murphy asked him if he had been drinking he replied, "Yes, I have."

Based on this conflicting testimony, the trial court made a number of findings. After concluding that Johnson had been proceeding *north* on T.H. 169, it reasoned that the "only way to reconcile the officer's testimony [regarding 'questionable driving activity by the driver of a southbound vehicle'] * * * is to find that, in fact, the officer must have observed another vehicle southbound and assumed that it was, in fact, one and the same as the Johnson vehicle when he pulled up behind it on County Highway # 14." The trial court nevertheless concluded that the stop was invalid because Murphy "had seen no unusual driving activity and had no articulable circumstances from which even an experienced police officer could reasonably infer any criminal activity of any kind on the part of the defendant Johnson." This appeal followed dismissal of the charge against Johnson.

**ISSUE**

Did the trial court err as a matter of law in concluding that the stop was invalid?

**DISCUSSION**

An order suppressing evidence in a criminal case may be reversed only "if the state demonstrates clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977). Suppression of the evidence obtained in this case undisputedly had a critical impact because it required dismissal of the complaint altogether.

An automobile stop is valid if the police who made the stop are able to articulate at the omnibus hearing that they had a "particularized and objective basis for suspecting the particular persons stopped of crimi-

nal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (quoted by *State v. Kvam*, 336 N.W.2d 525, 528 (Minn.1983); *Berge v. Commissioner of Public Safety*, 374 N.W.2d 730 (Minn.1985)). "All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity." *State v. Johnson*, 257 N.W.2d 308, 309 (Minn.1977).

The trial court found that Murphy had actually observed questionable driving activity on the part of some driver, and it is clear that those observations would have justified a stop of that driver. Even if (as the trial court found) Murphy stopped the wrong car, such a mistake in identity does not necessarily render the stop invalid. If Murphy acted reasonably in stopping the car which he mistakenly (but reasonably) believed to be the same one he had been following, then the stop was valid. *See City of St. Paul v. Vaughn*, 306 Minn. 337, 237 N.W.2d 365 (Minn.1975); *State v. Dillon*, 308 Minn. 464, 242 N.W.2d 84 (Minn. 1976) (distinguishing situation in which trial court discredits officer's actual observation of a traffic violation with one where the trial court finds that the arresting officer merely made a reasonable mistake in identity). Given that it was 10:20 p.m. but well lit,[2] that Johnson's car was rather unusual (a red Camaro), that the traffic was fairly light, and that Murphy turned around and pulled up behind Johnson within a minute and a half, Murphy's assumption that the car was the same one he had been following was a reasonable inference.

The State also raises as an issue the suppression of Johnson's admission that he had been drinking. It contends the admission was valid, even though made before Johnson was arrested and given the *Miranda* warning. The evidence establishes that Murphy's question was within the scope of a valid investigatory stop and did not amount to a custodial interrogation requiring a *Miranda* warning. *See Berkemer v. McCarty*, 468 U.S. 420, ——, 104 S.Ct.

**2.** Murphy testified at the implied consent hearing that visibility on county road 14 was good

because the nursery had halogen lights around it.

3138, 3148–52, 82 L.Ed.2d 317 (1984) (driver's admission that he had been drinking held admissible when made during a roadside interview pursuant to a routine traffic stop, even though *Miranda* warnings had not yet been given); *State v. Herem*, 384 N.W.2d 880 (Minn.1986).

## DECISION

The trial court's order is reversed and the charge is reinstated.

Reversed.